EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br>Aprobación de Reglamento para la Evaluación de Jueces y Juezas del Tribunal de Primera Instancia | 2018 TSPR 34<br><br>199 DPR ____ |

Número del Caso: ER-2018-2

Fecha: 23 de febrero de 2018

Materia: Resolución del Tribunal con Votos Particulares Disidentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Aprobación de Reglamento para
la Evaluación de Jueces y
Juezas del Tribunal de
Primera Instancia

ER-2018-2

RESOLUCIÓN

En San Juan, Puerto Rico, a 23 de febrero de 2018.

La Constitución de Puerto Rico, en su Artículo V, Sección 7, LPRA Tomo I, establece que "el Tribunal Supremo, adoptará reglas para la administración de los tribunales las que estarán sujetas a las leyes relativas a suministros, personal, asignación y fiscalización de fondos, y a otras leyes aplicables en general al gobierno. El Juez Presidente, dirigirá la administración de los tribunales y nombrará un director administrativo, quien desempeñará su cargo a discreción de dicho magistrado." De esa manera, al Tribunal Supremo se le delegó la autoridad de adoptar reglas de administración de los tribunales y al (a la) Juez(a) Presidente(a) la facultad de dirigir la administración de los tribunales y de asignar un Director Administrativo. Véanse, a manera de ejemplo, *In re Aprobación de las Reglas para los Procedimientos de Investigaciones*, 184 DPR 575, 582 (2012); *In re Disposiciones del Código Electoral de Puerto Rico para el Siglo XXI*, 184 DPR 369 (2012); *In re: Aprobación del Reglamento de Subastas Formales de la Rama Judicial*, 2017 TSPR 35. Véase, también, Diario de Sesiones de la Convención Constituyente de Puerto Rico 2613 (Ed. 1961).

ER-2018-2

Por virtud de la Ley Núm. 120-2017, la Asamblea Legislativa reconoció nuestra facultad constitucional de reglamentar. Por tal razón, decidió derogar por completo todo lo relacionado con la Comisión de Evaluación Judicial, para permitir que este Foro, en el ejercicio de nuestra jurisdicción constitucional, sea el ente que la reglamente. En atención a nuestra facultad constitucional, adoptamos el Reglamento para la Evaluación de Jueces y Juezas del Tribunal de Primera Instancia, que se acompaña y se hace formar parte de esta Resolución.

Notifíquese por correo electrónico al Director Administrativo de los Tribunales y al Director de la Oficina de Prensa.

Publíquese.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió un Voto Particular Disidente. La Juez Asociada señora Rodríguez Rodríguez emitió un Voto Particular Disidente. El Juez Asociado señor Colón Pérez disiente del curso de acción seguido por una mayoría de este Tribunal en el asunto que nos ocupa por fundamentos similares a los expresados en su Voto Particular Disidente en "In re: Aprobación de Enmiendas al Reglamento del Tribunal de Apelaciones".


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

ER-2018-2

**Reglamento para la evaluación de Jueces y Juezas del Tribunal de Primera Instancia**

**Regla 1. Fundamento Jurídico**

Este reglamento se promulga de conformidad con las disposiciones del Art. V, Sección 7 de la Constitución de Puerto Rico, que reconoce la facultad del Pleno del Tribunal Supremo para adoptar reglas de administración para la Rama Judicial. Tiene el fin de garantizar un procedimiento de evaluación justo para los Jueces y Juezas del Tribunal de Primera Instancia.

**Regla 2. Título**

Este Reglamento se conocerá como Reglamento para la Evaluación de Jueces y Juezas del Tribunal de Primera Instancia.

**Regla 3. Definiciones**

A. Comisión- Se refiere a la Comisión de Evaluación Judicial, creada por el Tribunal Supremo conforme su prerrogativa constitucional.

B. Director o Directora- Persona designada por el Pleno del Tribunal Supremo de Puerto Rico para ejercer la función de Director Ejecutivo o Directora Ejecutiva de la Comisión.

C. Escala de Medición- Es la escala utilizada por la Comisión para medir o evaluar el desempeño de la labor judicial con respecto a cada factor y componente de la evaluación.

D. Factores de Evaluación- Criterios que utiliza la Comisión para evaluar las ejecutorias de los Jueces y Juezas que componen el Tribunal de Primera Instancia.

E. Juez o Jueza- Se refiere a un Juez o Jueza del Tribunal de Primera Instancia cuyo desempeño judicial es evaluado por la Comisión.

F. Miembros de la Comisión- Personas nombradas por el Pleno del Tribunal Supremo de conformidad con la Regla cuatro (4) de este Reglamento.

G. Oficina de Evaluación Judicial- Se refiere a la Oficina que se crea mediante este Reglamento para coordinar, bajo la dirección de la Comisión, los aspectos administrativos del sistema de evaluación judicial.

H. Oficina de Nombramientos Judiciales- Se refiere a la Oficina de Nombramientos Judiciales, adscrita a la Oficina del Gobernador o Gobernadora de Puerto Rico, creada a tenor con el Art. 3 de la Ley Núm. 91-1991.

I. Queja- Solicitud de investigación contra un Juez o Jueza presentada por la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales.

J. Querella- Escrito presentado ante la Comisión de Disciplina Judicial del Tribunal Supremo, luego de una determinación de causa probable, en el cual se imputa a un Juez o Jueza conducta que pueda conllevar la imposición de cualquier sanción disciplinaria por violación a la ley, a los Cánones de Ética Judicial, al Código de Ética Profesional o a las órdenes y normas administrativas aplicables, por negligencia crasa o inhabilidad personal manifiesta en sus deberes judiciales conforme a las Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B.

K. Sistema de evaluación- Se refiere al sistema desarrollado, implementado y administrado por la Comisión, que comprende -sin que ello se limite a- la evaluación sobre labor, productividad y carga judicial de los Jueces y Juezas y la evaluación detallada de estos y estas ante una solicitud de ascenso o renominación, o a solicitud de alguno de los integrantes del Tribunal Supremo.

**Regla 4. Miembros de la Comisión: Nombramiento, facultades y limitaciones**

A. La Comisión estará compuesta por un presidente o presidenta y ocho miembros nombrados por el Pleno del Tribunal Supremo. De los miembros uno tendrá experiencia en asuntos de administración y otro será un ciudadano que no sea abogado o abogada. Los Jueces y Juezas del Tribunal Supremo serán miembros *ex officio* de la Comisión y podrán participar de cualquier reunión o actividad.

B. Los nombramientos de los miembros de la Comisión tendrán un término de tres (3) años, y ocuparán su cargo mientras gocen de la confianza del Pleno del Tribunal.

C. Lo miembros de la Comisión ocuparán sus cargos hasta que sus sucesores sean nombrados y tomen posesión del cargo. De ocurrir una vacante, el Pleno del Tribunal nombrará un suplente, quien ocupará el cargo por el resto del término para el cual fue nombrado el miembro que produjo la vacante.

ER-2018-2

D. El Presidente o Presidenta de la Comisión tendrá la facultad para designar de entre sus integrantes un Presidente Interino o Presidenta Interina que le sustituya en cualquier momento durante su ausencia.

E. Los miembros de la Comisión, una vez aceptan el nombramiento, reconocen y obligan a guardar la mas estricta confidencialidad. También se obligan a abstenerse de divulgar las confidencias, secretos, procesos de deliberación, y demás información y asuntos que puedan ser o hayan sido objeto de consideración por la Comisión.

F. Los miembros de la Comisión se inhibirán de participar en el proceso de evaluación de un Juez o Jueza cuando existan: (1) relaciones de parentesco dentro del segundo grado de consanguinidad o cuarto de afinidad; (2) amistad estrecha con el evaluado o evaluada o; (3) ocurra cualquier situación que pueda dar la apariencia de favoritismo, preferencia o parcialidad. Para inhibirse del proceso de evaluación, notificarán al Director o Directora, quien hará constar el hecho en el Acta de reunión y en el Informe Final de Evaluación correspondiente.

**Regla 5. Nombramiento y funciones del Director Ejecutivo o Directora Ejecutiva**

A. La dirección administrativa de la Comisión estará a cargo de un Director o Directora que nombrará el Pleno del Tribunal Supremo. El Director o la Directora será miembro *ex officio* de la Comisión y actuará como su Secretario o Secretaria.

B. El Director o Directora tendrá, entre otras, las siguientes funciones:

1. Custodiar y mantener bajo su control todos los documentos de la Comisión, incluyendo expedientes, libros de registros y archivos;

2. seleccionar, dirigir, coordinar y supervisar el personal que realiza las funciones de índole administrativa y establecer normas de conflictos de interés y otros aspectos éticos que aplican al personal de la Comisión. De entender que no cuenta con los recursos materiales o humanos suficientes debe comunicarlo a la Oficina del Juez Presidente o Jueza Presidenta, quien deberá suministrar los recursos necesarios;

3. preparar las actas de las sesiones de la Comisión y mantener el Registro de Actas por año natural;

ER-2018-2

4. coordinar investigaciones confidenciales sobre el carácter, reputación y desempeño judicial de los Jueces y Juezas. Podrá solicitar la comparecencia de cualquier persona o la entrega de cualquier documento necesario y pertinente para la evaluación;

5. certificar la asistencia por sesiones de los miembros de la Comisión;

6. coordinar la solicitud y recibo de información que necesite la Comisión;

7. solicitar y recibir las evaluaciones y recomendaciones de las personas consultadas;

8. solicitar y recibir toda la documentación e información necesaria para llevar a cabo la evaluación;

9. preparar el Informe Anual de Labor Realizada en la Comisión y entregarlo al Pleno del Tribunal Supremo el 30 de diciembre de cada año.

10. presentar recomendaciones sobre cualquier asunto relacionado con el descargo de sus funciones y la administración eficiente de este Reglamento.

11. comparecer en nombre y en representación de la Comisión ante cualquier organismo y en aquellas funciones y actividades oficiales que de tiempo en tiempo se le requiera y;

12. coordinar la realización de las funciones y deberes encomendados a la Comisión de conformidad con este Reglamento y realizar cualquier otra actividad que le sea encomendada por la Comisión o su Presidente o Presidenta y que sea necesaria para el cumplimiento de sus deberes y responsabilidades.

**Regla 6. Evaluaciones periódicas**

La Comisión realizará evaluaciones detalladas sobre las ejecutorias de los Jueces y Juezas. Para las evaluaciones se tomará en consideración:

1. estadísticas sobre labor, productividad y carga judicial;

2. opinión de los funcionarios y funcionarias del tribunal, abogados y abogadas, trabajadores y trabajadoras sociales, procuradores y procuradoras y fiscales que hayan comparecido ante la persona evaluada;

3. número y tipo de quejas y querellas presentadas contra la Juez o Jueza y su disposición;

ER-2018-2

    4. asistencia y puntualidad;

    5. eficiencia en el manejo de casos;

    6. conducta en sala y en el desempeño de sus demás funciones judiciales;

    7. conducta e imagen pública;

    8. temperamento judicial;

    9. cumplimiento con normas y directrices administrativas;

    10. capacidad administrativa, para el caso de los Jueces o Juezas que tengan asignadas funciones administrativas formales y;

    11. cualquier otro dato o información necesaria para cubrir las áreas de evaluación.

**Regla 7. Evaluaciones motivadas por solicitudes de ascenso o renominación**

A. En los casos de renominación o ascenso, cuando la Oficina de Nombramientos del Gobernador o Gobernadora lo solicite, la Comisión realizará una evaluación detallada -similar a la que se realiza en las evaluaciones periódicas- sobre el Juez o Jueza de que se trate y emitirá una recomendación. Esa recomendación estará acompañada de un informe de evaluación sobre sus años de servicio, cargos ocupados y una evaluación precisa y detallada de su desempeño conforme a los criterios de evaluación establecidos en la Regla 6 de este Reglamento.

B. En caso de que un Juez o Jueza solicite renominación o ascenso antes de que hayan transcurrido doce (12) meses desde su última evaluación de desempeño periódica, la Comisión podrá evaluarlo sin requerir que comparezca, si de una investigación preliminar no surgen cambios. Para la evaluación se utilizará la documentación y los Informes Finales de Evaluación mas recientes que obran en el expediente. Si la solicitud de renominación o ascenso ocurre luego de transcurrido los doce (12) meses, se realizará un proceso de evaluación completo, conforme se establece en este Reglamento y deberá citarse a la persona evaluada.

C. El Informe de Evaluación se enviará a la Oficina de Nombramientos del Gobernador o Gobernadora con ciento veinte (120) días de anticipación a la fecha de

ER-2018-2

vencimiento del término de Juez o Jueza que solicita renominación. Si se trata de una solicitud de ascenso, el informe se enviará con ciento veinte (120) días de anticipación a la fecha del recibo de la notificación de solicitud de ascenso ante la Oficina de Nombramientos del Gobernador o Gobernadora.

**Regla 8. Análisis sobre labor y productividad**

A. La Comisión analizará la información estadística sobre la labor, productividad y carga judicial del Juez o Jueza. Debe tomar en consideración los siguientes factores:

1. números de casos resueltos y el tipo de casos clasificados por asunto o materia;

2. número de casos sometidos y el tiempo transcurrido desde la fecha de radicación y la fecha en que quedaron sometidos;

3. número de recursos de revisión presentados, sean *certiorari* o apelaciones, en los que se solicita la revocación de una determinación judicial tomada por la persona evaluada;

4. número de veces que un foro de mayor jerarquía revoca la determinación judicial tomada por la persona evaluada;

5. Porcentaje de casos en que hubo revocaciones, expediciones y confirmaciones.

**Regla 9. Evaluaciones solicitadas por el Pleno del Tribunal Supremo**

La Comisión realizará evaluaciones -completas o parciales, detalladas o sobre labor, productividad y carga judicial- de cualquier juez o jueza cuando lo solicite el Pleno del Tribunal Supremo.

**Regla 10. Frecuencia de las Evaluaciones**

A. La Comisión realizará cada tres años evaluaciones detalladas sobre el desempeño judicial de los Jueces y Juezas. También se realizará una evaluación adicional al final del término de su nombramiento.

B. Se llevarán a cabo evaluaciones detalladas en casos de renominación o ascenso cuando la Oficina de Nombramientos del Gobernador o Gobernadora solicite una recomendación por parte de la Comisión.

C. Las evaluaciones realizadas a solicitud del Pleno del Tribunal Supremo podrán efectuarse en cualquier

ER-2018-2

momento durante el término de nombramiento del Juez o Jueza.

D. La Comisión podrá realizar evaluaciones de seguimiento. En este caso, podrá posponer la determinación final sobre la calificación del Juez o Jueza hasta que finalice el ciclo de evaluación.

E. La evaluación comprenderá las ejecutorias del Juez o Jueza durante el periodo que determine la Comisión.

F. El análisis estadístico sobre labor, productividad y carga judicial de los Jueces y Juezas se hará anualmente.

**Regla 11. Formulario y mecanismos para el acopio de información**

A. La Comisión adoptará formularios para acopiar información sobre la labor judicial de los Jueces y Juezas. Además, contará con el apoyo de investigadores o investigadoras que realizarán entrevistas e investigaciones sobre cualquier asunto encomendado por la Comisión.

B. A los abogados y abogadas se les consultará sobre la labor de los Jueces y Juezas mediante cuestionarios de evaluación enviados por correo postal o electrónico a la dirección que aparece registrada en el Registro Único de Abogados y Abogadas de Puerto Rico (RÚA).

C. La Comisión deberá establecer un proceso uniforme para seleccionar al azar una muestra representativa de los Abogados y Abogados que hayan comparecido antes el Juez o Jueza bajo evaluación, durante el periodo evaluado. Asimismo, deberá garantizarse la confidencialidad de la información provista.

**Regla 12. Fuentes de información**

A. Durante el proceso de evaluación, se podrá consultar a todo el personal o componente del Tribunal General de Justicia que, a juicio del Director o Directora de la Comisión sea pertinente.

B. Además del envío de cuestionarios, como parte de la evaluación se realizarán entrevistas a los miembros de la comunidad en que reside el Juez o Jueza bajo evaluación. En caso de que el Juez o Jueza haya residido en varios lugares durante el periodo de evaluación, deberán realizarse entrevistas en todos los lugares. Se entrevistará a todo el personal o componente del Tribunal General de Justicia que, a juicio del Director o Directora de la Comisión sea pertinente.

ER-2018-2

C. La Comisión podrá ordenar que se realicen visitas a las salas de los Jueces y Juezas. Las visitas podrán ser realizadas por uno o varios Comisionados o Comisionadas o por el personal de la Comisión. Además, la Comisión tendrá facultad de requerir grabaciones de vistas presididas por el Juez o Jueza.

**Regla 13. Quejas y Querellas**

A. Durante la evaluación judicial la Comisión considerará aquellas querellas que tienen determinación final.

B. En caso de querellas pendientes ante la Comisión de Disciplina Judicial del Tribunal Supremo, la Comisión realizará la evaluación en su totalidad y podrá retener el informe final hasta tanto se resuelva la querella presentada.

C. Cuando se trate de una queja ante la Oficina de Administración de los Tribunales, se solicitará de la Oficina de Asuntos Legales información detallada sobre la queja, incluyendo su estatus. Con el beneficio de esa información la Comisión determinará si retiene el informe final hasta que concluya la investigación o si procede a emitir el informe correspondiente.

**Regla 14. Confidencialidad del proceso y medidas de seguridad**

A. El proceso de evaluación que lleva a cabo la Comisión estará sujeto a normas de estricta confidencialidad, así como toda la información que se recopila y los documentos e informes que se generen. La información recopilada en las evaluaciones es para uso exclusivo de la Comisión y el Director o Directora observará las mas estrictas medidas de seguridad para garantizar la confidencialidad de la información ofrecida por las personas consultadas.

B. Los expedientes de las evaluaciones y los documentos generados en el proceso de evaluación serán custodiados en archivos de seguridad ubicados en la Oficina de la Comisión, hasta que sean destruidos, conforme lo determine la Comisión.

C. El personal de la Comisión prestará un juramento de que no divulgará la información confidencial obtenida como parte de sus funciones. Cualquier empleado, empleada o miembro de la Comisión que deliberadamente o por descuido u omisión ofreciere información confidencial podrá ser destituido de su puesto o empleo.

ER-2018-2

D. En el proceso de evaluación solo tendrán acceso a la información sobre calificaciones otorgadas y los documentos no considerados estrictamente confidenciales los miembros de la Comisión, el Juez o Jueza evaluado, los integrantes del Tribunal Supremo, el Director Administrativo o Directora Administrativa de los Tribunales y el Director o Directora de la Academia Judicial en lo que corresponde al desarrollo de programas y actividades de educación judicial.

E. Todo documento que contenga información, opiniones o entrevistas otorgadas por abogados y abogadas, funcionarios o funcionarias, o personas privadas consultadas durante el proceso de evaluación será considerado material estrictamente confidencial y no estará accesible a escrutinio público, con excepción de los miembros de la Comisión, su personal administrativo, los integrantes del Tribunal Supremo y el Director Administrativo o Directora Administrativa de los Tribunales.

F. Las comunicaciones que se remiten al Gobernador o a la Gobernadora como parte del proceso de renominación y ascenso estarán accesibles al público y para ello, serán publicadas en el portal cibernético oficial de la Comisión. Igualmente estará disponible al público cualquier informe de evaluación.

**Regla 15. Criterios de evaluación**

A. La evaluación del desempeño de los Jueces y Juezas se cimentará en los siguientes factores: (1) integridad; (2) reputación o integridad pública; (3) reputación intelectual; (4) destrezas profesionales; (5) capacidad de análisis; (6) laboriosidad; (7) capacidad administrativa; (8) temperamento; (9) competencia académica; (10) experiencia; (11) capacidad de rendimiento; (12) vocación de servicio público; (13) interés en proseguir una carrera judicial.

B. Cada factor de evaluación se analiza conforme a los siguientes atributos:

1. Integridad

a. Evita la apariencia de conducta judicial impropia.

b. No demuestra prejuicio o parcialidad por razón de: (i) condición física, mental o sensorial; (ii) sexo; (iii) origen; (iv) raza o etnia; (v) nacionalidad; (vi) creencias religiosas; (vii) creencias políticas; (viii) edad; (ix) condición

ER-2018-2

económica o social; (x) influencias del foro local; (xi) orientación sexual; u (xii) información genética.

c. Toma decisiones sin importar la identidad de las partes o de sus representantes legales.

d. Considera los argumentos ofrecidos por todas las partes previo a emitir una determinación final.

e. Resuelve imparcialmente.

2. Reputación o Imagen Pública

a. Proyecta una imagen que estimula el respeto y la confianza en la Judicatura.

3. Reputación Intelectual

a. Demuestra conocimiento del Derecho sustantivo.
b. Demuestra conocimiento de las reglas procesales.
c. Demuestra conocimiento de las reglas de evidencia.
d. Demuestra que se mantiene al día en el estudio del Derecho.
e. Demuestra habilidad para el razonamiento legal.

4. Destrezas profesionales.

a. Redacta escritos judiciales claros y fundamentados.
b. Delimita las controversias.
c. Promueve las estipulaciones y la transacción voluntaria de los litigios.
d. Atiende los procedimientos con antelación al juicio para que sean eficientes y oportunos.
e. Controla adecuadamente el trámite de los procedimientos.
f. Maneja eficientemente su calendario.
g. Promueve la mediación como mecanismo de resolución.
h. Utiliza apropiadamente la tecnología para mejorar la administración de la justicia.

i. Examina y atienda adecuadamente las solicitudes de suspensiones y de prórroga.
j. Emite instrucciones claras.
k. Explica sus determinaciones, siempre que es necesario.

5. Capacidad de análisis

        a. Identifica, organiza e interpreta los asuntos medulares de los litigios.

        b. Interpreta adecuadamente el derecho aplicable.

        c. Emite decisiones claras y completas.

6. Laboriosidad

        a. Comienza los trabajos a la hora establecida.

        b. Se prepara adecuadamente para las vistas.

        c. Maneja los procedimientos de forma expedita.

        d. Resuelve y emite órdenes, resoluciones y sentencia con prontitud.

        e. Asiste con regularidad y cumple con su horario de trabajo.

7. Capacidad administrativa

        a. Organiza y asigna apropiadamente el trabajo.

        b. Procura que se apliquen las normas y directrices establecidas.

        c. Colabora con la implantación de nuevos métodos, sistemas y procedimientos.

        d. Hace buen uso de los recursos disponibles.

8. Temperamento

        a. Es cortés y amable.
        b. Tiene sensibilidad y tacto.
        c. Actúa con serenidad y autocontrol.
        d. Promueve el orden, decoro y dignidad del tribunal y la solemnidad de los procedimientos.

9. Competencia académica

        a. Asiste regularmente a seminarios y adiestramientos ofrecidos por la Academia Judicial Puertorriqueña u otros recursos externos.

        b. Participa activamente como recurso en programas educativos o académicos ofrecidos por la Rama Judicial o instituciones educativas.

        c. Colabora en actividades dirigidas a orientar al público sobre los programas o servicios ofrecidos por el Sistema de Tribunales.

        d. Calidad de escritos o publicaciones dentro del campo jurídico.

        e. Posee o cursa estudios postgraduados.

ER-2018-2

10. Capacidad de rendimiento y atención de casos asignados. La evaluación de estos criterios está basada en datos estadísticos, incluyendo el análisis del índice de resolución e información recibida de funcionarios, funcionarias, abogadas y abogados consultados.

11. Experiencia

    a. Historial de Trabajo.
    b. Tiempo dedicado a la Judicatura.
    c. Designaciones y encomiendas especiales.
    d. Experiencia en: (1) casos civiles; (2) casos criminales; (3) procesos de menores; (4) asuntos de relaciones de familia.

12. Vocación de servicio público. La evaluación de este criterio está basada en la autoevaluación realizada por el Juez o Jueza y en la opinión de los componentes del Sistema de Justicia consultados.

13. Interés en proseguir la carrera judicial. La evaluación de este criterio está basada en la autoevaluación realizada por el Juez o Jueza y en la opinión de los componentes del Sistema de Justicia consultados.

C. En el caso de las evaluaciones motivadas por solicitudes de ascenso a la Sala Superior se tomarán en consideración, además de los criterios antes mencionados, los siguientes:

1. El número de designaciones como Juez Superior o Jueza Superior y su desempeño en ellas.

2. Años de experiencia en la Sala Municipal.

D. En el caso de las evaluaciones motivadas por solicitudes de ascenso al Tribunal de Apelaciones se tomarán en consideración, además de los criterios mencionados en el inciso B de esta Regla, los siguientes:

1. Aptitud para trabajar en equipo con otros Jueces y Juezas.

2. Aptitud para trabajar en equipo con el personal del tribunal.

**Regla 16. Determinación de calificaciones**

A. El personal administrativo de la Comisión recopilará la información recibida en los formularios de evaluación y calculará los valores numéricos promedio para cada criterio de evaluación.

B. Una vez procesada la información recibida, se procederá a preparar el expediente de evaluación. Este expediente debe incluir un resumen de los valores promedio obtenidos en cada categoría y un desglose de los comentarios recibidos, clasificados esencialmente de la siguiente manera: positivo, negativo, positivo con señalamiento negativo, negativo con señalamiento positivo y recomendaciones.

C. El Director o la Directora, o la persona designada para ello, preparará para los miembros de la Comisión un proyecto de informe de hallazgos preliminares que incluirá la valoración numérica otorgada por los abogados y abogadas, los funcionarios y funcionarias consultados para cada criterio y la calificación preliminar de desempeño judicial del Juez o Jueza. El proyecto será utilizado como documento de trabajo durante la entrevista con el Juez o Jueza.

**Regla. 17. Escala de medición-evaluación periódica**

A. El desempeño periódico de los Jueces y Juezas con respecto a cada factor de evaluación es determinado por una escala que mide el nivel de calidad, capacidad y ejecución, según corresponda, de acuerdo con las siguientes gradaciones:

1. Nivel 5- Excepcionalmente bien calificado(a): Significa que la evaluación realizada demostró el máximo nivel de capacidad y ejecución. Los resultados son excelentes y consistentemente exceden las expectativas del desempeño esperado.

2. Nivel 4- Bien calificado(a): Significa que la evaluación realizada demostró que el nivel de capacidad y ejecución es muy satisfactorio y frecuentemente excede las expectativas del desempeño esperado.

3. Nivel 3- Calificado(a): Significa que la evaluación realizada demostró que el nivel de capacidad y ejecución es satisfactorio y ocasionalmente excede las expectativas del desempeño esperado.

4. Nivel 2- Deficiente: Significa que la evaluación realizada demostró que el nivel de capacidad y ejecución cumple con los parámetros mínimos requeridos para desempeñar su cargo, pero no alcanza en su totalidad el desempeño esperado.

5. Nivel 1- No calificado(a): Significa que la evaluación realizada demostró que el nivel de

capacidad y ejecución es insuficiente y no alcanza el desempeño esperado.

B. Dentro de cada uno de los niveles de gradación se establece una valoración numérica.

## Regla 18. Escala de medición-Evaluaciones motivadas por renominación o ascenso

En el caso de evaluaciones motivadas por solicitudes de ascenso o renominación, la calificación de la Comisión de Evaluación Judicial se determina de acuerdo con las siguientes gradaciones:

A. Solicitud de renominación:

1. Nivel 5- Excepcionalmente bien calificado(a): Significa que la evaluación realizada demostró que el candidato(a) posee las cualidades y atributos requeridos para continuar desempeñando su cargo al máximo nivel de capacidad y ejecución. Los resultados son excelentes y consistentemente exceden las expectativas del desempeño esperado.

2. Nivel 4- Bien calificado(a): Significa que la evaluación realizada demostró que el candidato(a) posee las cualidades y atributos requeridos para continuar desempeñando su cargo a un nivel de capacidad y ejecución muy satisfactorio y que su desempeño judicial frecuentemente excede las expectativas del desempeño esperado.

3. Nivel 3- Calificado(a): Significa que la evaluación realizada demostró que el candidato(a) ha desempeñado su cargo a un nivel de capacidad y ejecución satisfactorio y ocasionalmente ha excedido las expectativas del desempeño esperado.

4. Nivel 2- Deficiente: Significa que la evaluación realizada demostró que candidato(a) ha desempeñado su cargo a un nivel de capacidad y ejecución que cumple con los parámetros mínimos requeridos para desempeñar el cargo para el cual solicita renominación, pero se encontró que necesita mejorar sustancialmente su actual desempeño judicial.

5. Nivel 1- No calificado(a): Significa que la evaluación realizada demostró que el candidato(a) no posee el nivel de capacidad y ejecución requerido para desempeñar el cargo para el cual solicita renominación.

ER-2018-2

B. Solicitud de Ascenso a Juez o Jueza del Tribunal de Apelaciones

    1. Nivel 5- Excepcionalmente bien calificado(a): Significa que la evaluación realizada demostró que el candidato(a) posee las cualidades y atributos requeridos para desempeñar de forma muy efectiva el cargo de Juez o Jueza del Tribunal de Apelaciones.

    2. Nivel 4- Bien calificado(a): Significa que la evaluación realizada demostró que el candidato(a) posee las cualidades y atributos requeridos para desempeñar de forma efectiva el cargo de Juez o Jueza del Tribunal de Apelaciones.

    3. Nivel 3- Calificado(a): Significa que la evaluación realizada demostró que el candidato(a) posee las cualidades y atributos requeridos para desempeñar el cargo de Juez o Jueza del Tribunal de Apelaciones.

    4. Nivel 2- Deficiente: Significa que la evaluación realizada demostró que candidato(a) posee las cualidades y atributos mínimos requeridos para desempeñar el cargo de Juez o Jueza del Tribunal de Apelaciones, pero se encontró que necesita mejorar sustancialmente su desempeño judicial previo a obtener el ascenso solicitado.

    5. Nivel 1- No Calificado(a): Significa que la evaluación realizada demostró que el candidato(a) no posee el nivel de capacidad y ejecución requerido para desempeñar el cargo de Juez o Jueza del Tribunal de Apelaciones.


C. Solicitud de ascenso de Juez o Jueza Municipal a Juez o Jueza Superior

    1. Excepcionalmente bien calificado(a): Significa que la evaluación realizada demostró que el candidato(a) posee las cualidades y atributos requeridos para desempeñar de forma muy efectiva el cargo de Juez o Jueza Superior.

    2. Nivel 4- Bien calificado(a): Significa que la evaluación realizada demostró que el candidato(a) posee las cualidades y atributos requeridos para desempeñar de forma efectiva el cargo de Juez o Jueza Superior.

    3. Nivel 3- Calificado(a): Significa que la evaluación realizada demostró que el candidato(a) posee las cualidades y atributos requeridos para desempeñar el cargo de Juez o Jueza Superior.

ER-2018-2

    4. Nivel 2- Deficiente: Significa que la evaluación realizada demostró que candidato(a) posee las cualidades y atributos mínimos requeridos para desempeñar el cargo de Juez o Jueza Superior, pero se encontró que necesita mejorar sustancialmente su desempeño judicial previo a obtener el ascenso solicitado.

    5. Nivel 1- No Calificado(a): Significa que la evaluación realizada demostró que el candidato(a) no posee el nivel de capacidad y ejecución requerido para desempeñar el cargo de Juez o Jueza Superior.

D. Dentro de cada uno de los niveles de gradación se establecerá una valoración numérica.

**Regla 19. Convocatoria y Quórum de la Comisión**

A. El Presidente o Presidenta de la Comisión convocará las reuniones de la Comisión. Podrá delegar esa facultad al Director o Directora de la Comisión.

B. El quórum de la Comisión se constituirá con cinco (5) miembros.

C. Todos los acuerdos de la Comisión se adoptarán por mayoría de sus miembros. Los acuerdos podrán ser adoptados durante reuniones plenarias o por conferencias telefónicas.

**Regla 20. Primera comparecencia ante la Comisión**

A. Luego de analizada la información recopilada, el Juez o Jueza será citado a comparecer a una reunión ante la Comisión. Esta reunión tiene el propósito de intercambiar impresiones con el Juez o Jueza objeto de evaluación y aclarar cualquier duda que surja de la información recibida.

B. Celebrada la primera reunión y antes de emitir el informe de hallazgos preliminares, la Comisión podrá obtener más información de la Oficina de Evaluación Judicial o de cualquier fuente que considere pertinente.

**Regla 21. Segunda comparecencia ante la Comisión**

A. Tras la primera comparecencia del Juez o Jueza ante la Comisión en pleno, los miembros de la Comisión determinarán las calificaciones preliminares a ser otorgadas en cada criterio de evaluación y la calificación global preliminar correspondiente al desempeño judicial del Juez o Jueza. Esas calificaciones serán notificadas mediante un informe

ER-2018-2

de hallazgos preliminares que se enviará al Juez o Jueza a su correo electrónico oficial con acuse de recibo.

B. El Juez o Jueza tendrá un término de diez (10) días naturales, contados a partir de la notificación por correo electrónico del informe de hallazgos preliminares, para notificar si interesa una segunda comparecencia, ya sea personal o escrita, ante los miembros de la Comisión. Deberá enviar una comunicación a esos efectos por correo electrónico o correo interno de la Rama Judicial al Director o Directora.

C. Una vez recibida la solicitud de segunda comparecencia, el Director o Directora la incluirá en el calendario de la Comisión para ser atendida. En caso de que el Juez o Jueza haya solicitado comparecer personalmente, el Director o Directora notificará por escrito en un término de veinte (20) días la fecha en que deberá presentarse nuevamente a la Comisión.

D. Todo Juez o Jueza que solicite una segunda comparecencia, ya sea escrita o personal, deberá presentar por escrito un resumen de sus argumentos junto a cualquier documentación o evidencia en apoyo a su contención. Ese escrito deberá presentarse ante la Oficina de Evaluación Judicial con diez (10) naturales antes de la fecha pautada para la reunión en la que será atendida la solicitud.

E. Durante la comparecencia personal, el Juez o Jueza tendrá un turno de quince (15) minutos para presentar su postura. Finalizado ese término, la Comisión podrá interrogar al Juez o Jueza objeto de evaluación.

F. Si como resultado de esa segunda comparecencia la Comisión determina que es necesario realizar alguna acción posterior, la propia Comisión o la Oficina de Evaluación Judicial, por delegación o instrucción de la Comisión, tomará la acción que corresponda, previo a la determinación final sobre la evaluación.

**Regla 22. Grabación de reuniones**

A. Toda reunión de la Comisión será grabada.

B. Esta grabación será conservada en los archivos de la Oficina de Evaluación Judicial y podrá ser transcrita de estimarse necesario.

**Regla 23. Calificación final**

A. Celebrada la primera reunión, o la segunda si se solicitó, la Comisión determinará las calificaciones

ER-2018-2

finales para cada criterio de evaluación y la calificación final general del desempeño del Juez o Jueza.

B. Cuando los Comisionados o Comisionadas se encuentren igualmente divididos en la votación de la calificación a ser otorgada al Juez o Jueza objeto de evaluación, se adjudicará la mejor calificación. En esos casos, se le notificará en el informe de hallazgos preliminares y en el informe final de evaluación que hubo un empate en la calificación y, por esa razón, se adjudicó la mejor calificación.

C. Las calificaciones preliminares se considerarán finales en las siguientes circunstancias: (i) si el Juez o Jueza no solicita la segunda comparecencia dentro del término provisto luego de recibido el informe de hallazgos preliminares, o (ii) si el Juez o Jueza informa por escrito a la Comisión que acepta las calificaciones preliminares.

**Regla 24. Informe Final; notificación.**

A. El Director o Directora notificará, por correo interno de la Rama Judicial, copia del Informe Final de Evaluación al Juez o Jueza objeto de evaluación, al Pleno del Tribunal Supremo y al Director Administrativo o Directa Administrativa de los Tribunales. De igual manera, deberá notificarse en casos en que se realice una evaluación por el expediente sin la comparecencia del Juez o Jueza objeto de evaluación.

B. Cuando la evaluación sea motivada por una solicitud de ascenso o renominación, se enviará copia del Informe Final de Evaluación a la Oficina de Nombramientos Judiciales del Gobernador o Gobernadora de Puerto Rico y a la Oficina de Nombramientos del Senado de Puerto Rico.

**Regla 25. Referidos, recomendaciones y otras medidas**

A. De surgir cualquier información en el proceso de evaluación que demuestre o tienda a demostrar violación a la ley, a los Cánones de Ética Judicial, al Código de Ética Profesional, a las órdenes y normas administrativas aplicables, o que evidencie negligencia crasa, inhabilidad o incompetencia profesional manifiesta o una condición de salud física o mental, ya sea temporera o permanente, que menoscabe el desempeño de las funciones judiciales de un Juez o Jueza, la Comisión referirá el asunto al Pleno del Tribunal Supremo para el trámite que estime pertinente.

ER-2018-2

B. Una vez concluida la evaluación, y a la luz de sus hallazgos, la Comisión realizará, entre otras cosas, lo siguiente:

1. Ordenar evaluaciones de seguimiento en los casos que a su juicio lo ameriten;

2. Referir al Juez o Jueza a la Academia Judicial o a cualquier otro recurso externo para que participe de seminarios o adiestramientos relacionados a las áreas con deficiencia;

3. Recomendar al Pleno del Tribunal Supremo que el Juez o Jueza sea referido a una evaluación psicológica o psiquiátrica cuando la evaluación realizada refleje un problema de salud emocional o mental. El propósito de esa evaluación será determinar la aptitud y capacidad del Juez o Jueza y, en los casos correspondientes, recomendar la ayuda necesaria desde el punto de vista remedial. Si el Juez o Jueza se niega a someterse a esa evaluación, el Pleno del Tribunal Supremo podrá recomendar que sea referido el asunto a la Oficina de Asuntos Legales de la Oficina de Administraciones de los Tribunales para la acción que proceda.

4. Referir el Juez o Jueza a una reunión con el Juez Administrador o Jueza Administradora de la Región en la que trabaja o con el Director Administrativo o Directora Administrativa de los Tribunales para que se discutan aspectos o hallazgos relevantes de su evaluación:

5. Recomendar al Pleno del Tribunal Supremo asignaciones, traslados, designaciones y cualquier otra medida que a su juicio pueda resultar beneficiosa para el Juez o Jueza.

6. Sugerir cualquier otra medida que estime necesaria.

C. En caso de que el Juez o Jueza obtenga una calificación de "no calificado(a)" en la evaluación periódica, se notificará de inmediato el informe final de evaluación al Director Administrativo o Directora Administrativa de los Tribunales para que determine si procede una investigación al amparo de las Reglas de Disciplina Judicial.

**Regla 26. Revisión de evaluación final**

A. La Comisión podrá revisar el informe final de evaluación en cualquier etapa posterior, aun cuando se haya notificado al Juez o Jueza, si recibe nuevos datos o información que impidan sostener las conclusiones y

determinaciones incluidas en el informe. En caso de entenderlo pertinente, la Comisión podrá citar de nuevo al Juez o Jueza.

B. En la eventualidad de que la Comisión enmiende el informe final de evaluación ya notificado, deberá notificarlo de nuevo al Juez o Jueza, quien podrá solicitar una nueva comparecencia ante la Comisión. Para ello se activarán los términos y el procedimiento que establece la Regla 21 de este Reglamento.

**Regla 27. Reuniones**

La Comisión podrá celebrar todas las reuniones que estime necesarias para discutir asuntos administrativos y de política pública.

**Regla 28. Conservación y disposición de documentos**

A. Las siguientes normas regirá el proceso de disposición y conservación de los documentos creados en las evaluaciones de Jueces y Juezas:

1. Jueces Activos y Juezas Activas- Se conservará todo el expediente mientras ocupen sus cargos en el Tribunal de Primera Instancia.

2. Jueces Inactivos y Juezas Inactivas- son los que cesaron en sus funciones judiciales pero respecto a los cuales existe posibilidad de reingreso a la judicatura. Se conservará todo el expediente por seis (6) años a partir del cese. Luego, se dispondrá de toda la documentación, excepto de la hoja de datos personales mas reciente y de todos los informes finales de evaluación, que deberán conservarse hasta que la Comisión advenga en conocimiento del fallecimiento del Juez o Jueza o de que cumpla los setenta años de edad, lo que ocurra primero.

3. Jueces y Juezas fallecidos, jubilados, separados por incapacidad, destituidos o ascendidos a Juez o Jueza del Tribunal de Apelaciones o del Tribunal Supremo- Se conservará todo el expediente por un año a partir del cese, según sea el caso particular.

B. Una vez se complete el término de retención antes establecido y con el propósito de garantizar la confidencialidad, los expedientes serán destruidos por personal de la Oficina de Evaluación Judicial, previa autorización del Director o Directora, mediante el uso de máquinas de triturar documentos.

C. Se mantendrá una lista de los expedientes destruidos que incluirá la fecha y motivo por el cual fueron destruidos.

ER-2018-2

**Regla 29. Cláusula de separabilidad**

Si cualquier disposición de este Reglamento es declarada inconstitucional o nula por un tribunal o autoridad competente, las disposiciones restantes continuarán vigentes.

**Regla 30. Derogación**

Se deroga el *Reglamento para la evaluación de Jueces y Juezas del Tribunal de Primera Instancia de 18 de marzo de 2015* y cualquier dispocisión reglamentaria o administrativa que esté en conflicto con el Reglamento aquí aprobado.

**Regla 31. Vigencia**

Este Reglamento comenzará a regir treinta días después de su aprobación.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Aprobación de Reglamento para
la Evaluación de Jueces y Juezas        ER-2018-2
del Tribunal de Primera
Instancia

Voto particular disidente que emitió la Jueza Presidenta ORONOZ RODRÍGUEZ

En San Juan, Puerto Rico, a 23 de febrero de 2018.

Hoy, como parte de un esfuerzo sistemático por usurpar más facultades administrativas de la Presidencia de este Tribunal, se aprueba una nueva reglamentación cuyo único fin es traspasar al pleno el funcionamiento y administración del sistema de evaluación de jueces y juezas que por décadas ha asistido a la función administrativa constitucionalmente delegada al Juez o a la Jueza Presidenta. Esto, sin mayor estudio o consideración del asunto y sin siquiera recibir el insumo público que enriquece la faceta reglamentaria de nuestra función como Tribunal.

ER-2018-2

Al igual que en la Resolución emitida hoy en *In re: Enmiendas al Reglamento del Tribunal de Apelaciones*, ER-2018-01, una mayoría de este Tribunal nuevamente justifica su determinación de aprobar este Reglamento con la aprobación de la Ley Núm. 120-2017. Este proceder, se amparó en una ley que forma parte de un diseño político dirigido a restarle facultades constitucionales a esta servidora como Jueza Presidenta, y que menoscaba aún más la confianza pública en esta institución. Ello en momentos cuando se exige que nuestro sistema de evaluación de jueces opere, como cuestión de realidad y de apariencia, libre de influencias indebidas. Por ello, disiento del curso de acción que hoy una mayoría promueve.

**A.**

Por cerca de tres décadas nuestro sistema de evaluación judicial operó bajo la estructura que dispuso la Ley Núm. 91-1991, la cual creó "una Comisión de Evaluación Judicial, adscrita a la Oficina del Juez Presidente del Tribunal Supremo de Puerto Rico[,] [...] compuesta por nueve miembros seleccionados y nombrados por el Juez Presidente del Tribunal Supremo". Artículos 7 y 8 de la Ley Núm. 91-1991, respectivamente.

Este diseño, el cual se mantuvo incólume a pesar de un intento por socavarlo,[1] se remonta a las recomendaciones que

---

[1] *Véase* Ley Núm. 67-2014, que revirtió los cambios dispuestos por la Ley Núm. 45-2010 para que la Comisión de Evaluación Judicial estuviera

ER-2018-2

hace más de 30 años formuló la *Comisión Asesora del Juez Presidente sobre la Estructura y Funcionamiento del Tribunal de Primera Instancia*, quien en 1987 propuso que "la labor judicial de los jueces debe ser objeto de evaluación periódica y sistemática por el Director Administrativo de los Tribunales, quien formulará recomendaciones específicas en cada caso al Juez Presidente. Este podrá designar un Comité de Evaluación Judicial que colabore en dicha tarea." 48 Rev. Col. Abog. P.R. 5, 10 (1987).

Al elaborar sobre lo anterior, dicha Comisión explicó lo siguiente:

> Durante todo el término de su nombramiento, la labor de los jueces debe ser evaluada en forma periódica y sistemática. Esta obligación corresponde al Director Administrativo de los Tribunales, quien tiene a su disposición la información necesaria. El Juez Presidente podrá designar un comité de evaluación judicial para colaborar en la tarea. La evaluación incluirá todos los aspectos relacionados con la competencia intelectual y profesional del juez, su laboriosidad, integridad, puntualidad, dedicación, temperamento judicial, sensibilidad y relaciones con los miembros foro y de la comunidad. El Director Administrativo someterá al Juez Presidente recomendaciones concretas y específicas en cada caso y remitirá informes periódicos de los resultados[.]

48 Rev. Col. Abog. P.R. a la pág. 18.

Durante estas tres décadas, este Tribunal nunca alteró el esquema recogido por la Ley Núm. 91-1991, el cual siempre fomentó un rol independiente para la Presidencia de este

---

adscrita al Tribunal Supremo y compuesta por nueve (9) miembros seleccionados y nombrados por una mayoría de este Foro.

ER-2018-2

Tribunal sobre las distintas facetas que atañen la evaluación judicial, incluyendo sus aspectos operacionales. Sin embargo, mediante la aprobación de la Ley Núm. 120-2017 -y nuevamente violentando la separación de poderes y la independencia judicial- la Asamblea Legislativa derogó todo este diseño administrativo para traspasarle al pleno de este Tribunal la responsabilidad de reglamentar la organización y el funcionamiento de la Comisión de Evaluación Judicial.[2]

En vez de distanciarse de los fines articulados en esa ley para restarle poderes administrativos a la Jueza Presidenta, una mayoría de este Tribunal simplemente ha decidido abandonar el esquema de evaluación judicial que ha operado durante la mayor parte de nuestra historia, sin articular, como mínimo, una explicación válida y coherente que justifique este proceder. De manera que no puedo sino concluir que el único fin del cambio en la reglamentación aprobada por la mayoría de este Tribunal es inhibir el rol independiente que por años desempeñó la Presidencia de este Tribunal en cuanto al sistema de evaluación de jueces y juezas.[3] Este propósito surge claramente al evaluar los cambios cosméticos que se realizaron en el Reglamento que ahora entra en vigor y que no responden a ningún propósito

---

[2] Véanse los Arts. 1-5 de la Ley Núm. 120-2017 para enmendar y derogar varios artículos de la Ley Núm. 91-1991.

[3] Conviene señalar que durante los dos años que he presidido la Comisión de Evaluación Judicial, ningún Juez Asociado o Jueza Asociada solicitó participar de alguna reunión de la Comisión, a pesar de que pueden hacerlo y distintos Jueces Asociados lo han hecho en el pasado.

ER-2018-2

objetivo dirigido a mejorar el proceso de evaluación. Los invito a comparar el Reglamento que hoy se aprueba y el que estuvo vigente desde el 2015 y, como notarán, los cambios más significativos fueron sustituir "Jueza Presidenta" por "el Pleno del Tribunal Supremo".

En particular, resulta evidente que el objetivo principal de su adopción es despojar a la Jueza Presidenta de la facultad de designar a los Miembros de la Comisión y de nombrar al Director Ejecutivo o Directora Ejecutiva de ese organismo. Ello, aun cuando este último cargo es inherentemente administrativo y requiere que el funcionario o funcionaria trabaje en conjunto con la Presidencia y el Director Administrativo, quienes son los que están llamados a ejercer la función de administrar y supervisar el funcionamiento adecuado del sistema. Son estos funcionarios quienes están en mejor posición para conocer las particularidades de las regiones judiciales y que tienen los elementos de juicio para tomar acciones oportunas para atender los asuntos administrativos planteados.

Existe un gran riesgo, pues, que al traspasar la autoridad nominadora de la Jueza Presidenta a los nueve jueces y juezas que componen este Tribunal, los trabajos administrativos que se conducen en esta Comisión se tornen ineficientes y pierdan su utilidad para que la Presidencia, asistida del Director Administrativo de los Tribunales,

identifique oportunamente situaciones que impactan el funcionamiento adecuado del sistema judicial.

Esto porque, aunque a primera vista el proceso de evaluación judicial pudiera parecer meramente el medio mediante el cual se asiste a un magistrado a mejorar su desempeño, o al Ejecutivo al evaluar adecuadamente una petición de re nominación o ascenso, este también resulta sumamente importante para la administración de nuestro sistema judicial.

La evaluación de jueces y juezas es un instrumento esencial para la ejecución responsable de la función administrativa – función inherente al cargo de la Presidencia del Tribunal Supremo. Entre muchas otras, la participación directa que hasta hoy gozaba la Presidencia en este proceso le permitía tener los elementos de juicio necesarios para el proceso de asignaciones, designaciones y traslados de los recursos judiciales. Presenta un retrato inalterado del funcionamiento del sistema, que permite detectar patrones de conducta y dinámicas entre los jueces y juezas bajo evaluación y el personal de apoyo asignados a una región. Asimismo, asiste en identificar prácticas que pueden ser nocivas al desempeño de las y los funcionarios del sistema y que, de no ser atendidas, pueden socavar la confianza de la población en su Judicatura.

En fin, se trata de una herramienta administrativa necesaria para maximizar y redistribuir los recursos

ER-2018-2

disponibles del personal judicial y administrativo de apoyo a la función judicial. Transformar el rol de la Presidencia a la de un mero espectador del proceso le priva de los instrumentos necesarios para actuar con celeridad en la toma de decisiones y manejar las situaciones que dirigen el funcionamiento diario de nuestros tribunales.

A su vez, en cuanto a la Comisión, preocupa que una mayoría de este Tribunal, como nuevo autoproclamado ente nominador de ese cuerpo, opte por retirarle la confianza a los miembros que nutren al organismo de su conocimiento histórico y diversidad de experiencias, y que le han servido bien a la Rama Judicial y al País. De hecho, algunos de sus miembros actuales llevan en el puesto desde que se creó la Comisión en 1991 y están en una posición inigualable para asesorar a este Tribunal en cuanto al futuro de tan importante Comisión.

**B.**

Existe otro detalle que abona a la conclusión de que este Reglamento se aprobó con el único objetivo de usurpar áreas de la Presidencia de este Tribunal que operan de manera independiente. En particular, el proceso mediante el cual este se adoptó, ya que la evaluación de jueces es un área respecto a la cual este Tribunal debe ser particularmente cuidadoso para evitar que el País le perciba como que actúa motivado por razones indebidas.

A pesar de lo anterior, una mayoría de este Tribunal decidió apartarse — de manera sumaria y sin discusión pública alguna — de la experiencia institucional que por décadas ha guiado el sistema de evaluación judicial. Peor aún, y obviando la importancia de esta reglamentación, abandonaron el proceso que de ordinario seguimos "al preparar un reglamento, donde recopilamos información, celebramos vistas públicas, obtenemos sugerencias y críticas a los proyectos propuestos e intentamos diseñar un remedio de aplicabilidad general para atender un tipo particular de situación." *Ortiz v. Dir. Adm. De Los Tribunales*, 152 D.P.R. 161, 185 (2000).

No cabe duda de que las ideas o preocupaciones que pudieran tener algunos miembros de este Tribunal respecto al proceso de evaluación judicial vigente podían ser atendidas a poco se sometiera dicha reglamentación a los mismos rigores de estudio, evaluación y comentarios que hemos utilizado para otros reglamentos adoptados por este Foro. Más aun, cuando el proceso de evaluación judicial es uno que se nutre de los distintos componentes del sistema de justicia, por lo que el mismo se beneficiaría del criterio de funcionarios públicos, la comunidad legal, académicos y la ciudadanía en general. De esta manera, y de haber sido ese el objetivo, hubieran atendido legítimamente el interés de eficiencia y transparencia al que debemos aspirar. Sin embargo, una mayoría decidió aprobar este Reglamento de espaldas al País, sin tan siquiera dar espacio a la participación de la

ER-2018-2

comunidad jurídica para que se expresara sobre su procedencia. Lamentablemente, tal curso de acción parece ignorar que la evaluación de jueces y juezas es necesaria para afianzar el principio de independencia judicial, pues el mismo está atado inextricablemente al ejercicio riguroso de una fiscalización que abarque mejorar el desempeño judicial y el compromiso de rendir cuentas a la comunidad sobre la labor de nuestra Judicatura. *Véase In re Conferencia Judicial de P.R.*, 122 D.P.R. 420, 421 (1988).

## C.

En fin, inhibir la función independiente que por décadas ha ejercido la Presidencia de este Tribunal en materia de evaluación judicial es una actuación que los miembros de la mayoría no pueden tomar a oscuras y sin un respaldo objetivo que fundamente su proceder de forma adecuada. En un sistema constitucional democrático como el nuestro la legitimidad misma de este Tribunal descansa en su capacidad para fundamentar adecuadamente sus actuaciones. No es suficiente, pues, con contar internamente con una mayoría simple de votos. Es necesario que este Tribunal además ejerza su poder legítimamente; lo cual aquí no ha ocurrido.

En vista de ello, y toda vez que la mayoría no logra sustentar sus acciones en insumo objetivo alguno, ni puede demostrarle al País, con el peso de sus argumentos, que como cuestión de realidad y de apariencia opera libre de las

ER-2018-2

influencias indebidas que algunos pretenden, disiento ya que no es más que un intento burdo por controlar el sistema de evaluaciones de desempeño que reciben nuestros jueces y juezas.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Aprobación Reglamento para la<br>Evaluación de Jueces y Juezas<br>del Tribunal de Primera<br>Instancia | **Núm.** ER-2018-2 |

Voto Particular Disidente emitido por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 23 de febrero de 2018

> Pero cuando volvía en sí lamentaba con toda el alma no ser un Águila para remontar montañas, y se sentía tristísima de ser una Mosca, y por eso volaba tanto, y estaba tan inquieta, y daba tantas vueltas, hasta que lentamente, por la noche, volvía a poner las sienes en la almohada.[4]

Durante el día de hoy, una mayoría de este Tribunal obedece un mandato legislativo que incide directa y adversamente en la administración de la Rama Judicial. En total contravención a la doctrina de separación de poderes, la Asamblea Legislativa, mediante la aprobación de la Ley Núm. 120-2017, derogó las disposiciones contenidas en la *Ley del Sistema de Evaluación de Jueces y Candidatos a Jueces* relativas a la Comisión de Evaluación Judicial y ordenó al pleno del Tribunal la redacción de un reglamento con el fin diseñar un proceso distinto de evaluación. Ello, con el

---

[4] Augusto Monterroso, La mosca que soñaba que era un Águila, en La oveja negra y demás fábulas, en la pág. 17 (Ediciones Era, 1996).

único objetivo de despojar a la Jueza Presidenta de funciones inmanentemente administrativas y dotar a los integrantes de este Foro de un poder que supere aquel que ya ostentan por el mero hecho de constituir una mayoría.

De forma inaudita, pues, la Rama Legislativa altera el funcionamiento de este Tribunal y determina, al margen del texto de la Constitución, que corresponde al pleno de este Foro asumir responsabilidades administrativas. Al acatar ese mandato, una mayoría, mediante la aprobación de un reglamento, se arroga de forma improcedente y contraria al Estado de Derecho, el poder de administrar la Rama Judicial. Es decir, la reglamentación que hoy se aprueba para regir el procedimiento para la evaluación de los jueces y juezas que componen nuestro sistema de justicia no es más que otro intento de la mayoría de atornillarse en el poder. Esto, mediante disposiciones reglamentarias redactadas y aprobadas por ellos mismos que los facultan a ejercer el rol de administrador que la Constitución expresamente delegó en la figura de la Jueza Presidenta.

El poder de administrar un sistema de justicia requiere destreza, capacidad y la habilidad de estudiar detenidamente su funcionamiento antes de implementar cambios en el mismo. Con el Reglamento que se aprueba durante el día de hoy, una mayoría asume ligeramente las nuevas responsabilidades de índole administrativo que, con la ayuda de la Legislatura de turno, se ha atribuido y simplemente emula los preceptos que regían el sistema de evaluación anterior. Una comparación

del reglamento que hoy se aprueba con el que quedó derogado en función de la aprobación de la Ley Núm. 120-2017 demuestra que, en esencia, el único cambio al sistema instituido para la evaluación de jueces y juezas estriba en meras sustituciones léxicas. De una lectura del nuevo reglamento no surge siquiera el ingenio de crear algo distinto, sino únicamente esa obstinación -tan característica de los miembros de la mayoría- por imponerse y perpetuarse en el poder.

## II

Como se anticipó, el reglamento objeto de esta resolución es una copia casi idéntica de aquél que fue aprobado por la Comisión de Evaluación Judicial el 18 de marzo de 2015. La diferencia más importante consiste en la sustitución generalizada del término "Jueza Presidenta" por "el Pleno del Tribunal". De esta manera, todas las responsabilidades administrativas ejercidas por la Jueza Presidenta en lo que atañe la administración y eficiencia del sistema de evaluación de jueces y juezas deberán, de ahora en adelante, ejercerse de manera colegiada por todos los integrantes de este Foro. Así, además de examinar sosegadamente las controversias sustantivas que se presentan ante este Tribunal; realizar y discutir recomendaciones individuales informadas sobre sus méritos; redactar ponencias para resolver aquellas que el Pleno tenga a bien expedir, y supervisar y asignar trabajo a sus respectivos

oficiales jurídicos y/o asistentes administrativos; ahora los Jueces Asociado y Juezas Asociadas de este Foro también seremos responsables por entender en los pormenores de todo lo relacionado con las evaluaciones de los más de trescientos (300) jueces y juezas que componen el Tribunal de Primera Instancia.

La falta de esmero y dedicación en la descarga de las nuevas funciones administrativas asumidas por la mayoría, según surge del reglamento que hoy aprueban, es reveladora. Ciertamente, la preocupación de una mayoría no gira en torno a transformar o modernizar el estado actual de las cosas para lograr mayor eficiencia, sino más bien en torno a poseer la autoridad (y autoría) sobre lo que ya fue creado por otros. Como ejemplo de esta falta de cuidado en la confección del reglamento de epígrafe, nótese que la mayoría cambia las palabras empleadas en el reglamento anterior para describir las escalas de medición de desempeño, mas no así el contenido de las mismas. Así las cosas, conforme al nuevo Reglamento, una calificación de "Deficiente" ahora "[s]ignifica que la evaluación realizada demostró que el nivel de capacidad y ejecución cumple con los parámetros mínimos requeridos para desempeñar su cargo, pero no alcanza en su totalidad el desempeño esperado". *Véanse* Reglas 17, 18 del Reglamento. En el reglamento anterior, esa misma definición aplicaba a una calificación de "Calificado". Resulta incompatible catalogar una ejecución que cumple con los "parámetros mínimos requeridos" como deficiente, que significa "falto o

incompleto, [q]ue tiene algún defecto o que no alcanza el nivel considerado normal". Diccionario de la lengua española, Real Academia Española, Vol. I, en la pág. 737. (22da ed. 2001). Justamente por ello, en el reglamento anterior, la descripción correspondía a una evaluación de "Calificado". *Véase* Comisión de Evaluación Judicial, *Reglamento para la evaluación de jueces y juezas del Tribunal de Primera Instancia*, 28 de marzo de 2015. ¿Será que quienes al presente son calificados, de ahora en adelante serán deficientes? ¿Será eso lo que se busca? ¿Por qué?

## III

Además de contravenir el texto claro de nuestra constitución,[5] la auto asignación improcedente por parte de la mayoría de nuevas responsabilidades administrativas por la vía reglamentaria hace que resuenen aquellas palabras proferidas a la Legislatura en el año 2010 como un quejido grito de ayuda:

> Empero, un Tribunal de siete Jueces no puede atender la carga actual de recursos y celebrar vistas orales con frecuencia, por el tiempo de preparación y análisis del expediente que cada vista y la discusión subsiguiente en Pleno conllevarían para cada uno de los Jueces de este Foro. No hay tiempo para eso con la tarea semanal de casos nuevos para estudio e informe. Por eso es necesario reducir la carga individual de casos por Juez, lo que sólo puede hacerse aumentando la composición del Tribunal.

*In re Solicitud Aumentar Núm. Jueces TS*, 180 D.P.R. 54, 74-75 (2010).

---

[5] Véase mi voto particular disidente en *In re Aprobación de Enmiendas al Reglamento del Tribunal de Apelaciones*.

No ha de sorprender a nadie que, en aquel momento, aquella representación sobre la carga de trabajo era fundamental para justificar un aumento completamente innecesario en nuestra plantilla de jueces y juezas. En aquel entonces, además, una mayoría afirmó que la solicitud para aumentar el número de jueces la hacían "conscientes de que todas las medidas que adoptemos tienen que emplearse adecuadamente para que sirvan a los propósitos genuinos que las inspiran". *Id.* en la pág. 77. Que no quepa duda del compromiso cabal de la mayoría con ese pronunciamiento. Desde entonces hasta ahora ha quedado claro que el "propósito genuino" que invariablemente inspira las acciones de una mayoría continúa siendo el mismo: el ejercicio omnímodo del poder a costa del desvanecimiento de nuestra democracia constitucional.

Cabe preguntarse si la arrogación de funciones administrativas que supone el reglamento que hoy se aprueba responde a una merma en la presentación de recursos ante este Tribunal que, a su vez, ha tenido el efecto de descongestionar aquellas agendas que tanto privaban a los Jueces y Juezas de tiempo para realizar sus funciones judiciales. Para ello, conviene referirnos al resumen acumulativo de recursos presentados, resueltos y pendientes para el periodo que comprende los años fiscales del 2009-2010 al 2016-2017. Tal y como surge de éste, el número de recursos presentados ante este Tribunal se ha mantenido estable durante los últimos siete (7) años, con un aumento

sustancial observable únicamente en este último año fiscal, que fue un año electoral. Lo que ha variado, curiosamente, es el índice de resolución. Con la suma de dos (2) jueces adicionales, cualquiera hubiese esperado un aumento significativo en la resolución de las controversias jurídicas que penden ante este Tribunal. No obstante, el índice de resolución ha sido inestable, con un por ciento tan bajo como %85.41 en el año fiscal 2013-2014. Ello, en comparación al índice de %95.54 del año fiscal 2009-2010.[6]

Lo anterior refleja que los aparentes propósitos que guían la aprobación de distintas medidas por parte de la mayoría no son siempre asequibles. A pesar de que no se indica qué propósitos específicos persigue el reglamento para la evaluación de jueces y juezas que hoy se aprueba, sus "propósitos genuinos" son evidentes. El reglamento que hoy se aprueba despoja, injustificadamente a la Jueza Presidenta de su poder de administrar, poder que, por décadas ha sido ejercido conforme a Derecho por aquéllos a quienes la Constitución expresamente les encomienda la administración de la Rama Judicial. La mayoría, renuente a aceptar tal delegación, continúa su cruzada al poder. Lástima que, en lugar de un renacimiento, esta cruzada

---

[6] Dado que en algún momento la mayoría también procurará arrogarse la facultad de preparar los Informes Anuales de la Rama Judicial, convendría que aprovecharan esta coyuntura para auto-evaluar su desempeño y conocer las estadísticas que detallan el funcionamiento de todos los componentes del sistema para así poder sustentar sus propuestas con algo más que la obtención de los votos para implementarlas.

represente la continuidad y prevalencia del "medioevo puertorriqueño"[7] y el desfallecimiento de nuestra Constitución y los valores democráticos que ésta encarna.


                              Anabelle Rodríguez Rodríguez
                                    Juez Asociada

---

[7] *In re Solicitud Aumentar Núm. Jueces TS*, 180 D.P.R. 54, 142 (2010) (Rodríguez, Rodríguez, J., Voto Particular Disidente).